## In re GRAPP.
### Patent Appeal No. 3088.

Court of Customs and Patent Appeals.
April 24, 1933.

F. A. Whiteley and John H. Ruckman, both of Minneapolis, Minn., for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner, rejecting all of the claims of appellant's application, numbered 1 to 8, inclusive. Claims 1 and 2 are article claims; claims 3 to 8, inclusive, are process claims.

Claims 1 and 3 are illustrative of the claims in issue and read as follows:

"1. A mattress and the like comprising a filling of fluffy material and a compressed insulating buffer completely surrounding said filling."

"3. The process of manufacturing mattresses and the like which consists in subjecting a felt web to the action of heat, moisture and friction, placing the material thus produced around a filling of fluffy material to form a compressed insulated buffer therefor, and securing said buffer in place."

Appellant's application relates to mattresses and the like, and processes for manufacturing the same. The mattress comprises a filling of fluffy material and a compressed buffer completely surrounding said filling. Said buffer comprises top and bottom pieces, edge pieces, and side members; outside of the buffer is a casing.

The specification of appellant states: "* * * An object of my invention is to provide a reinforced construction of both sides of the mattress with insulated buffing material to take care not only of the added weight when a person is sitting on the side or edge of the mattress but also to prevent packing of the mattress as the result of the rubbing or frictional action in connection with the heat and moisture of the body previously referred to. In the construction of

my improved mattress, I have developed a reinforced insulated buffer which prevents the friction or rubbing action from being transmitted to and the body heat or moisture from getting into the center or buoyant felt material of the mattress. This insulated buffer is of a semitough reinforced texture and acts as a binder, and furthermore, spreads the carrying power of the inner felt to three or more times what it is without the buffer. * * * "

The references cited in the decision of the Board of Appeals are: Fleischmann, 5,275, September 4, 1847; Brooks, 364,797, June 14, 1887; Thompson, 970,971, September 20, 1910; Wadsworth, 1,460,519, July 3, 1923; Byers et al., 1,596,715, August 17, 1926.

The first decision of the Board of Appeals herein was rendered on May 29, 1931, in which all of the claims were rejected except claim 2, which the Board held was allowable. On June 9, 1931, the Board modified this decision by affirming the rejection by the Examiner of said claim 2.

The Board held, as to claims 1 and 2, that they were fully anticipated by the patent to Brooks, and as to claims 3 to 8, inclusive, it held, as did the Examiner, that they were unpatentable as being aggregative.

We will first consider the rejection of claims 1 and 2. The patent to Brooks discloses a mattress comprising the usual body material and a covering layer consisting of nonheat conducting material, applied either to the top or bottom or both faces of the mattress, which cover is of relatively stiff material, formed of united layers of thick paper, linen backing therefor, and felt or rubber. This composite sheet, previously formed, is cut to a size to accurately fit the top or bottom of the mattress and is attached thereto by overlying bands or by small tabs and buttons on the edges of the cover and sides of the mattress respectively.

The Board in its decision said: "It is our opinion that Brooks fully anticipates the terms of claim 1 so far as the essential features are concerned. The covering material is clearly, 'a compressed insulating buffer.' All of the constituents thereof, the paper, the linen and the felt are compressed to a degree equal to that of applicant's buffer sheet and would be clearly as proof against circulation of air and moisture. Brooks stated that it is non-heat conducting. We regard it merely as a matter of choice whether the buffer layer is extended to also cover the side edges and ends of the mattress as well

as the top and bottom. The matter of distributing the load is purely a mechanical one and applies to any layer which would be stiffer than the body of the mattress. No showing appears of record why this would not be true of the covering layer or buffer shown by Brooks even though he does not name this function as such."

In his specification Brooks states:

"It is found advantageous in many instances to construct mattresses very thin, as a matter of economy of space and material. When thus constructed, it is found that the cold readily penetrates the mattress, more especially when used in connection with metallic springs or bed-frames, greatly to the injury and discomfort of the sleeper.

"I aim by my invention to provide a means whereby a thin mattress may be used with comfort and safety, and the cold from drafts or other causes be prevented from penetrating the same. * * * "

As hereinbefore indicated, the buffer material shown by Brooks does not completely surround the filling material of the mattress, but the edges of the same are left exposed, while appellant's claims 1 and 2 provide that the buffer material shall completely surround the filling material. We do not think the Board of Appeals gave due consideration to the new and useful result secured by having the buffer completely surrounding the filling material. This element, appellant states in his specification, assists in retaining the original shape of the mattress when a person is sitting upon the edge of the bed; because of the insulating qualities of the buffer, heat and moisture cannot penetrate to the inner part of the buffer and filling of the mattress, thus permitting the mattress to be cleaned and washed without deterioration of the inner part thereof.

These facts indicate that appellant's article, as claimed, is new and useful, and we do not think that the references either anticipate appellant's invention or that modifications of the structures shown in the references to produce appellant's structure would be obvious to one skilled in the art. We are therefore of the opinion that the Board of Appeals erred in finding that claims 1 and 2 are not patentable.

With respect to claims 3 to 8, inclusive, as hereinbefore noted, they were held unpatentable by both tribunals of the Patent Office as being aggregative. In its decision the Board said: "Claims 3 to 8, inclusive, are in the form of method claims including the

steps of forming the compressed buffer material and then associating it with the body of the mattress. The examiner rejects these claims as being for aggregation. It appears that the step of forming this buffer sheet is not in any way depending on afterwards using it as a component part of a mattress. This so-called buffer material might be useful in many relations where a relatively strong stiff felt-like material is necessary such as an insulating layer in building construction or for carpet padding. The broad step of laying it up with the body of the mattress is likewise not dependent on how the buffer sheet is formed. Other buffer sheet material might be used in the same way in the alleged process without in any way affecting the order of the steps or results considered as a method. We consider this ground of rejection warranted."

We are in accord with the views of the Board above quoted. It may be that the process of making the buffer material employed by appellant is new and inventive, but it is here claimed only as an element in a process of manufacturing mattresses and the like. As stated by the Board: "The broad step of laying it [the buffer material] up with the body of the mattress is likewise not dependent on how the buffer sheet is formed."

We think that the case of In re Harris, 37 App. D. C. 374, is in point upon this question. In that case there was involved process claims for a series of steps relating to preparing, storing, and dispensing a beverage. The court, in affirming a rejection of said claims, quoted with approval the following language of the Commissioner of Patents: "There is believed to be no essential relation between the three steps of preparing, storing, and dispensing the beverage, which applicant successively employs. Each step appears to be complete in itself and independent of the other. The claims covering these successive steps are in the nature of an aggregation of unrelated functions performed by appellant's apparatus."

In view of the fact that appellant in his specification states that the buffer material produced by him as set out in his process claims may be used for many purposes other than its use in the making of mattresses, there is believed to be no essential relation between the step of producing the material recited in the said claims and the use of said material in a mattress or like article, and therefore the claims covering these successive steps are in the nature of an aggregation of unrelated functions.

We find no error in the decision of the Board in finding claims 3 to 8, inclusive, unpatentable.

For the reasons given, the decision of the Board of Appeals is affirmed as to claims 3 to 8, inclusive, and reversed as to claims 1 and 2.